Mr. Justice Robb
delivered the opinion of the Court:
This is an appeal from a judgment of the supreme court of the District quashing a writ of attachment.
Sec. 19 of the banking laws of the State of New York authorizes the Superintendent of Banks, if be shall have reason to conclude from an examination provided .by the section that *549 any bank “is in an unsound or unsafe condition to transact the business for which it is organized, or that it is unsafe or inexpedient for it to continue business,” forthwith to “take possession of the property and business of such corporation or individual banker, and retain such possession until such corporation or individual banker shall resume business, or its affairs be finally liquidated,” as therein provided. The section further requires the Superintendent, on taking such possession, to give notice to all banks, trust companies, associations, or individuals holding or in possession of any assets of the involved bank, and no bank, trust company, association, or individual having knowledge of such possession,, shall have a lien or charge for any judgment, advance, or clearance thereafter made, or liability thereafter incurred, against any of the assets of the involved bank. TJpon taking possession of the property and business of such involved bank, “the Superintendent is authorized to collect moneys due to such corporation or individual banker,, and do such other acts as are necessary to conserve its assets and business, and shall proceed to liquidate the affairs thereof,” as the statute provides. The Superintendent may, however, permit a bank to resume business upon conditions approved by him.
On January 7th, 1911, the Superintendent of Banks of the State of New York, acting under authority conferred upon him by said sec. 19, took charge of the Carnegie Trust Company, a New York corporation located in the city of New York, for the purpose of liquidating its assets, and appointed George W. Egbert as special deputy superintendent in charge of said Trust, company, who immediately took possession of the property and' the business of said trust company, and who thereafter continued in such possession. Among the assets of said trust company thus coming into the possession of said superintendent was a demand promissory note for $9,000, dated March 12, 1907, signed by E. Quincy Smith, of. Washington, District of Columbia, as maker, and payable in the city of New York to-said Carnegie Trust Company. Two thousand dollars had been paid upon said note, and it was collaterally secured by forty *550 shares of the stock of the Union Savings Bank of Washington, District of Columbia.
Mr. Smith, the maker of the above note, was president of the National City Bank and the Union Savings Bank of this city. Said Carnegie Trust Company was indebted to the Union Savings Bank, it is claimed, in a sum exceeding $4,000, and to said National City Bank in a sum somewhat less than $4,000. On or about January 7, 1911, said National City Bank addressed a letter to said Carnegie Trust Company, stating that there had been deposited with said National City Bank the sum of $7,006.88 to pay principal and interest of Mr. Smith’s note, and requesting that the note and collateral be forwarded to said National City Bank. On January 10th, following, said special deputy superintendent of banks wrote the National City Bank suggesting that it forward a draft in payment of the Smith note to some financial institution in the city of New York. Upon the same day said special deputy superintendent received a telephone message from- the National City Bank requesting that the note be forwarded to Washington for collection, and on the following day, January 11th, said special deputy superintendent received another message from the National City Bank to the same effect. On January 14th, following, said special deputy superintendent received a letter from Mr. Smith addressed to the Carnegie Trust Company, in which he stated that, having understood from telephonic communications that the note would be sent to Washington, he had disposed of the collateral, promising immediate delivery; that the situation was embarrassing to him and threatened financial loss. He therefore requested that the Carnegie Trust Company immediately send the note for collection, with the collateral attached. In response to this letter, said note was deposited for collection with the Bankers’ Trust Company of the city of New York, and was indorsed, “Pay to the order of Bankers’ Trust Company, O. H. Cheney, Superintendent of Banks, in trust for Carnegie Trust Company.” Thereupon said Bankers’ Trust Company forwarded said note and collateral to its Washington correspondent, the National Savings and Trust Company, for *551 collection. Said National Savings and Trust Company received the note on January 16, 1911, and thereupon notified Mr. Smith, who informed said trust company that he would call later in the day and pay the same. This he did, and received his note and collateral. Said National Savings and Trust Company thereupon drew a draft in favor of the Bankers’ Trust Company in settlement of the amount of the collection, but before this draft could be forwarded there were served upon said National Savings and Trust Company two writs of attachment and garnishment, one in favor of said Union Savings Bank of this city, to cover the alleged indebtedness of the Carnegie Trust Company to it, and the other in favor of said National City Bank, covering the alleged indebtedness of said Carnegie Trust Company to that bank. Thereupon the Bankers’ Trust Company filed an intervening petition setting forth the above facts and praying that the funds in the hands of said National Savings and Trust Company be ordered turned over to said petitioner.
From the foregoing statement it will be at once apparent that the question before us is whether said Superintendent of Banks, upon taking possession of the Carnegie Trust Company, acquired possessory title to the Smith note as a local asset of the company for the benefit of all its stockholders and creditors. If he did, the judgment of the trial court was correct. Jenkins v. Purcell, 29 App. D. C. 209, 9 L.R.A.(N.S.) 1074. In that case certain cattle rightfully in the possession of the Virginia receiver were brought into this jurisdiction for delivery to a local purchaser from the receiver. The proceeds of the sale were attached by a domestic creditor of the owner. We ruled that, inasmuch as the receiver came here vested with the legal custody and control of property that passed to him within the jurisdiction of his appointment, we would, upon the principle of comity, recognize and protect his title to such property.
In the present case the Smith note was payable in the city of New York, and the Superintendent of Banks took possession of it as an asset of the trust company. We think that upon *552 both principle and authority this note was property the situs of which was in the State of New York, and hence that, under the provisions of the banking laws of that State, it became by involuntary transfer the property of the Superintendent in trust for the creditors and stockholders of the trust company. While it is true that the receiver appointed in one State for an insolvent corporation has no title as such to property located in another State, the rule does not apply in the present case for the reason that this note, as above pointed out, having come into the possession of the Superintendent, and having been due and payable within his jurisdiction, was in law property located within his jurisdiction, and not in any proper sense in this. The receiver having obtained rightful possession of this property, we will, for the reasons announced in Jenkins v. Purcell, respect his title to it here.
In Osgood v. Maguire, 61 N. Y. 524, the receiver of a New York corporation brought an action upon promissory notes which were part of the assets that came into his hands as receiver, and which were made by a resident of Massachusetts and payable in the State of New York. The defendant pleaded in bar that after the appointment of the receiver, the debt due upon the notes was attached in an action in Massachusetts brought by a creditor against the corporation. The court sustained the right of the receiver to recover, saying: “These notes were payable in this State, and passed into the hands of the receivers; they were property the situs of which was in this State. By the law of this State this property was put into the hands of the receivers for the benefit of all the stockholders and creditors of the company. The appointment of the receivers worked an involuntary transfer of the property to them, and there was an attempt to procure an involuntary transfer in Massachusetts for the benefit of a creditor there. Under such circumstances the first transfer must prevail.” The reasoning in that case is applicable here.
Conceding, as we must, that the debt evidenced by this Smith note would have been subject to attachment or trustee process in this District prior to the act of the Superintendent of Banks *553 in thus taking possession of said note (Chicago, R. I. & P. R. Co. v. Sturm, 174 U. S. 710, 43 L. ed. 1144, 19 Sup. Ct. Rep. 797), we think the case is governed by a different rule front that controlling tangible property located outside the jurisdiction of the receiver. This credit, being at the situs of the domicil of the Carnegie Trust Company, passed to the custody of the Superintendent of Banks because the New York law so provided, and it thereupon, by operation of law, came under the dominion and control of said Superintendent. Upon the-ceasing of the dominion of the trust company over this note, and the transfer of that dominion to the Superintendent, the power to levy by garnishee process on the debt at the residence of the debtor in this District was destroyed. See King v. Cross, 175 U. S. 396, 44 L. ed. 211, 20 Sup. Ct. Rep. 131.
The judgment is affirmed, with costs. Affirmed.