1828.

Plestoro
v.
Abraham.

[*236]

----

PLESTORO AND OTHERS *v.* ABRAHAM AND THOMPSON.

Where a British subject, being indebted, left England, and while on his voyage to this country, and before he arrived here, he was under the laws of Great Britain declared a bankrupt, and provisional assignees were appointed; it was held, that the assignment to such assignees divested the title of the bankrupt to the personal property brought with him to this country.

1828.    And an injunction will lie, upon the application of such assignees, to restrain

Plestoro    a third person from delivering the goods to the bankrupt, and also to re-
v.        strain the latter from receiving or prosecuting for the same.[1]

Abraham.    And the commencement of suits against the bankrupt by his creditors in the
courts of common law of this state will not defeat the effect of the assign-
ment to his assignees.

October 21st.    THE defendant Abraham, is a British subject, domici-
liated in England. In July, 1828, he left that country for
the United States, bringing with him 24 cases of paintings,
cabinet furniture and merchandize, and arrived in New
York about the first of September, when the goods were
deposited in the public store, under the charge of the de-
fendant Thompson, as collector of the port. Shortly after
Abraham left England, a commission of bankruptcy was
taken out against him there, by virtue of which he was
duly declared a bankrupt; and on the 8th day of August,
[*237]    J. Johnson, one of the *complainants was appointed by the
commissioners provisional assignee. On the 24th of Sep-
tember, 1828, the complainants, the provisional assignee,
and the creditors of Abraham, all of whom were British
subjects and residents in England, filed their bill in this
cause, and obtained an injunction restraining the collector
from delivering the goods to Abraham, and restraining the
latter from receiving or prosecuting for the same. Abra-
ham put in his answer, neither admitting or denying the
proceedings under the commission, but alleging that he left
England in the lawful pursuit of his business, with a *bona
fide* intention of returning, and denying that he was insolv-
ent or had committed any act of bankruptcy.

D. Graham, for the defendant, moved for a dissolution
of the injunction on the bill and answer.

[1] On appeal, the Court of Errors held, that an assignee under a foreign
commission of bankruptcy is not entitled before judgment to an injunction to
restrain the bankrupt from receiving from the custom house here, goods which
were in transit (on the high seas) at the time of suing out the commission.
S. C., 3 Wen. 538.

*H. Bleecker*, contra.

THE CHANCELLOR:—In the case of *Holmes* v. *Remsen*, (4 Johns. Ch. R. 460,) Chancellor Kent decided that an assignment by the commissioners of bankruptcy in England operated as a legal transfer of the personal property and choses in action of the bankrupt in this country, even as against a subsequent attachment taken out here by an American creditor, under the act against absconding and absent debtors. It is doubtful whether that decision, to its full extent, can be sustained. It was strongly questioned and ably opposed by Platt, J., in a case between the same parties, which subsequently came before the Supreme Court. (20 John. Rep. 229.) It also stands in opposition to the opinions of the state courts in Connecticut, Massachusetts, Pennsylvania, Maryland, and in both of the Carolinas, (Kirby's Rep. 313; 9 Mass. Rep. 350; 13 Mass. Rep. 146; 6 Binney, 353; 1 Harris & M'Henry, 236; 2 Haywood, 24; 1 Const. Rep. 283;) and to the decision of the Supreme Court of the United States in *Harrison* v. *Sterry*, (5 Cranch, 289,) and in *Ogden* v. *Sanders*, (12 Wheaton, 213.)

But the case before me steers clear of all these decisions. In the cases cited, the contest was between foreign assignees *and domestic creditors claiming under the laws of the country where the property was situated, and where the suits were brought. The question in those cases was, whether the personal property of the debtor was to be considered as having locality, for the purpose of giving a remedy to the creditors residing in the country where the property was in fact situated at the time of the foreign assignment. In this case, the controversy is between the bankrupt and his assignee and creditors, all residing in the country under whose laws the assignment was made. Even the property itself, at the time of the assignment, was constructively within the jurisdiction of that country, being on the high seas, in the actual possession of a British subject. Under such circumstances, the assignment had

[*238]

1828.

Plestoro
v.
Abraham.

the effect to change the property and divest the title of the bankrupt, as effectually as if the same had been sold in England under an execution against him, or he had voluntarily conveyed the same to the assignee for the benefit of his creditors. If no act of bankruptcy has been committed, he must apply to the proper tribunal of his own country to supersede the commission; for while it remains in force the adjudication of the commissioners is conclusive against him as to that fact.

It probably was not necessary for the creditors to join with the assignee in this suit; but that affords no ground for the dissolution of the injunction.

By the sixty-ninth section of the English bankrupt act, (Statute 6, Geo. 4, ch. 16, sec. 69,) proving a debt under the commission by a creditor, is declared to be an election by him not to proceed against the bankrupt by action. Although the creditors in this case have prosecuted the bankrupt in the Superior Court of the city of New York, they will still be entitled, on relinquishing these suits, to prove their debts under the commission. If they elect to proceed under the commission, perhaps that court may consider it a sufficient ground to order a stay of proceedings in those suits, and to discharge the defendants without bail. But the institution of these suits by the creditors cannot prevent the legal effect of the assignment in changing the property in the goods and *vesting them in the assignee for the benefit of the creditors generally.

[*239]

The motion to dissolve the injunction is therefore denied, with costs.